1

2

3                                                              **O**

4

5                                                    JS - 6

6

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  IV SOLUTIONS, INC.,              )   Case No. CV 15-01418 DDP (SSx)
                                     )
12                 Plaintiff,        )   **ORDER GRANTING DEFENDANT'S MOTION**
                                     )   **TO DISMISS**
13        v.                         )
                                     )   [Dkt. No. 15]
14  UNITED HEALTHCARE,               )
                                     )
15                 Defendants.       )
    ─────────────────────────────   )

16

17        Presently before the Court is Defendant's motion to dismiss

18  Plaintiff's First Amended Complaint ("FAC").  (Dkt. No. 15.)

19  Having heard oral arguments and considered the parties'

20  submissions, the Court adopts the following order.

21  **I.    BACKGROUND**

22        Plaintiff is a supplier of a "blood product called intravenous

23  immune globulin ('IVIG')."  (FAC, ¶¶ 9-10, 14-15.)  Plaintiff

24  alleges it supplied IVIG to a patient referred to as "M.O." from

25  January to July 2006.  (Id. at ¶ 9.)  Plaintiff further alleges

26  that M.O. was at all times insured by Defendant "and/or" another

27  company called "HealthNet."  (Id.)  Plaintiff alleges, and provides

28  an exhibit to show, that it had previously entered into a contract

    with a company called "Coalition America," which it alleges was

1    "acting as United's designated contracting agent," to be paid for

2    its services at a certain rate. (<u>Id.</u> at ¶¶ 8, 31; <u>Id.</u>, Ex. A.)

3    That rate, as specified in the document attached to Plaintiff's

4    FAC, was to be the "lesser of 70% billed charges or usual,

5    customary, and reasonable charges." (<u>Id.</u>, Ex. A.) Plaintiff

6    alleges it provided services to M.O. under initial authorization

7    from insurer HealthNet, only to later be told by HealthNet that in

8    fact M.O.'s correct insurer was Defendant United Healthcare. (<u>Id.</u>

9    at ¶¶ 16-19.) Plaintiff alleges that on March 24, 2006, Defendant

10   authorized IVIG for M.O.[1] and "agreed that IV Solutions would be

11   paid its total billed charges." (<u>Id.</u> at ¶¶ 20-23.) Plaintiff

12   alleges that it "timely submitted its total billed charge claims"

13   to Defendant. (<u>Id.</u> at ¶ 24.)

14       Plaintiff alleges that Defendant failed to timely pay the

15   amount owed, instead paying only what it "unilaterally" defined as

16   the "usual and customary" rates, based on "geographic profiling"

17   and pricing data from its Ingenix pricing service. (<u>Id.</u> at ¶¶ 25-

18   26, 32.)

19       Plaintiff alleges that Defendant has "issued many written

20   explanations and made many verbal statements" regarding the amount

21   it was willing to pay, but that these were misrepresentations

22   and/or stalling tactics. (<u>Id.</u> at ¶ 34.) Plaintiff alleges that

23   although Defendant issued "explanations of benefits" and "other

24   writings explaining and attempting to justify its processing of

25   payments" between July 2006 and April 2011, "[t]o date, United has

26

27       [1]Plaintiff alleges it memorialized these authorizations in

28   writing at the time; however, those memorializations are not
     attached to the FAC. (FAC, ¶ 21.)

1  not issued a complete, full and final denial, or complete

2  explanation" of its position on the claims.

3      Plaintiff filed this lawsuit in state court in January 2015;

4  it was removed to federal court in February 2015. (Dkt. No. 2.)

5  Defendant moves to dismiss based on statute of limitations, failure

6  to allege the existence of a contract, breach, or damages, and

7  failure to state a claim based on an open book account.  (Dkt. No.

8  15.)

9  **II.  LEGAL STANDARD**

10     In order to survive a motion to dismiss for failure to state a

11  claim, a complaint need only include "a short and plain statement

12  of the claim showing that the pleader is entitled to relief." <u>Bell</u>

13  <u>Atl. Corp. v. Twombly,</u> 550 U.S. 544, 55 (2007) (quoting <u>Conley v.</u>

14  <u>Gibson,</u> 355 U.S. 41, 47 (1957)).  A complaint must include

15  "sufficient factual matter, accepted as true, to state a claim to

16  relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S.

17  662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  When

18  considering a Rule 12(b)(6) motion, a court must "accept as true

19  all allegations of material fact and must construe those facts in

20  the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213

21  F.3d 443, 447 (9th Cir. 2000).

22  **III. DISCUSSION**

23  **A.   Statute of Limitations**

24     Plaintiff's claims are subject to statutes of limitations as

25  follows:

26

27

28

1    - Claims for breach of contract and open book account must be

2    filed within four years of the time of accrual.[2]  Cal. Civ. Proc.

3    Code § 337(1)-(2).

4    - Claims for breach of implied contract, breach of the

5    covenant of good faith and fair dealing, and negligent

6    misrepresentation must be filed within two years of the time of

7    accrual.  Cal. Civ. Proc. Code § 339(1); <u>Love v. Fire Ins. Exch.</u>,

8    221 Cal. App. 3d 1136, 1144 n.4 (1990); <u>E-Fab, Inc. v. Accountants,

9    Inc. Servs.</u>, 153 Cal. App. 4th 1308, 1316 (2007).

10    - Claims for fraud, including intentional misrepresentation,

11    must be filed within three years of the time of accrual.  Cal. Civ.

12    Proc. Code § 338(d).

13    Plaintiff alleges that Defendant made misrepresentations, but

14    not later than April 2011.  Thus, the claims for intentional and

15    negligent misrepresentation are time-barred.

16    A cause of action for an open book account accrues on "the

17    date of the last entry in the book account."  <u>In re Roberts Farms

18    Inc.</u>, 980 F.2d 1248, 1253 (9th Cir. 1992).  Plaintiff alleges that

19

20    [2]Defendant argues that the claim for an open book account is
21    subject to a two-year statute of limitations to the degree that it
     is premised on exactly the same facts as a breach of implied
22    contract, citing <u>Filmservice Labs., Inc. v. Harvey Bernhard
     Enterprises, Inc.</u>, 208 Cal. App. 3d 1297, 1307 (1989).  But the
23    holding in <u>Filmservice</u> is likely a narrow one, applying only to
     circumstances where the allegation of an "open book account" is
24    simply a naked attempt to recharacterize an oral agreement as a
     book account to get around the statutory time bar.  <u>Id.</u> at 1307.
25    ("[N]o facts have been alleged which give rise to any reasonable
     inference that the oral contract was superseded by an open book
26    account or account stated agreement. The mere existence of two
     invoices ... do not evidence such accounts. Those invoices simply
27    memorialize the oral contract.").  In any event, as will be
     discussed below, whether the statute of limitations is two years or
28    four years, the date of accrual is early enough that Plaintiff's
     claim cannot survive.

it has maintained its book account "in the regular course of business", (FAC, ¶ 68), and that it provided its final service to the patient M.O. on "about July 7, 2006." (<u>Id.</u> at ¶ 9.)  Plaintiff also alleges that "[a]fter providing the authorized services to M.O., IV Solutions timely submitted its total billed charges for payment" to Defendant.  (<u>Id.</u> at ¶ 24.)  Thus, the final entry in the book account was presumably made some time shortly after the provision of the final treatment to M.O.  Because that final entry would have occurred many years before January 2011, the statute of limitations has run, and the claim is time-barred.

As to the other claims, the time of accrual of the cause of action is the time when Defendant's payment in full was due.  "A cause of action for breach of contract accrues at the time of breach, which then starts the limitations period running." <u>Cochran v. Cochran</u>, 56 Cal. App. 4th 1115, 1120 (1997).  It is well-established that where a contract does not specify a time for performance, the party is obliged to perform within a reasonable time, and the statute of limitations begins to run when a "reasonable time" has expired without performance.  Cal. Civ. Code § 1657; <u>Caner v. Owners' Realty Co.</u>, 33 Cal. App. 479, 481 (1917).  Although "[w]hat constitutes a 'reasonable time' for performance is a question of fact," <u>Consol. World Investments, Inc. v. Lido Preferred Ltd.</u>, 9 Cal. App. 4th 373, 381 (1992), Plaintiff has pled no facts plausibly suggesting that delaying payment for four-and-a-half years after the initial demand was made would have been reasonable.[3]  Thus, payment due under a contract, whether express

---

[3] "[D]etermining whether a complaint states a plausible claim
(continued...)

1   or implied, would have been due some time before (probably well

2   before) January 2011, let alone January 2013.  Thus, Plaintiff's

3   claims for breach of contract (whether express or implied), filed

4   in January 2015, are time-barred absent equitable tolling,

5   discussed below.

6   **B.   Equitable Tolling**

7       Plaintiff argues that the statutes of limitations should be

8   subject to equitable tolling, because Defendant has never issued an

9   unequivocal denial of the claim.  Defendant, however, argues that

10  Plaintiff's own pleadings show that it has.

11      Plaintiff relies on <u>Prudential-LMI Com. Ins. v. Superior</u>

12  <u>Court</u>, which held that the 12-month statute of limitations imposed

13  on claims arising under statutorily-defined fire insurance policies

14  should be equitably tolled from the time the insured submitted a

15  claim to the insurer to the time the insurer issued a final

16  decision on the claim.  51 Cal. 3d 674, 687-93 (1990).  The Court

17  reasoned that equitable tolling "allows the claims process to

18  function effectively, instead of requiring the insured to file suit

19  before the claim has been investigated and determined by the

20  insurer, and that "it protects the reasonable expectations of the

21  insured by requiring the insurer to investigate the claim without

22  later invoking a technical rule that often results in an unfair

23  forfeiture of policy benefits."  <u>Id.</u> at 692.

24      However, the <u>Prudential-LMI</u> court specifically limited its

25  holding to "the first party progressive property loss cases in the

26  _____

27      [3](...continued)
    is context-specific, requiring the reviewing court to draw on its
28  experience and common sense."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
    663-64 (2009).

context of a homeowner's insurance policy." _Id._ at 679.  It also explicitly rested its decision on the fact that the 12-month limitations period in the statutorily-mandated property loss contracts was considerably shorter than the period for breach of contract claims in other contexts.  _Id._ at 691.  Finally, in _Prudential-LMI_, the plaintiff was an insured, suing its insurer on an insurance policy.  The court ruled on the provisions of the Insurance Code, a body of law specifically designed to protected insured parties.  _Id._ at 687-93 (citing and interpreting Cal. Ins. Code § 2071).

Here, Plaintiff sues for payment under an ordinary contract, and the concerns embodied in _Prudential-LMI_ do not apply, or at any rate apply with less force.  Once a reasonable time for payment had passed, either Defendant was in breach (if it paid less than the amount owed under the contract) or it was not.  If Plaintiff believed it was owed more, it could have sued right away; Defendant's alleged statements as to how much it was obligated to pay, and the allegedly "partial" payments it made, did not affect Plaintiff's right to sue.

Plaintiff also argues for either tolling, waiver, or estoppel because it "reasonably relied on United's conduct and was induced by United to believe the possibility of an amicable settlement could be reached." (Opp'n at 7.)  But the mere possibility of settlement, or ongoing efforts to settle, do not toll the statute of limitations – especially where the limitations period is lengthy

1   enough to allow for attempts at settlement prior within the

2   period.[4]

3        Even if bad faith in negotiations to resolve the problem could

4   result in waiver or estoppel, Plaintiff does not allege that

5   Defendant made misrepresentations that would have induced Plaintiff

6   to give up its right to sue because an amicable settlement was

7   close at hand.  Indeed, Plaintiff does not allege that Defendant

8   offered the possibility of settlement at all.  At most, Plaintiff

9   alleges that Defendant made misrepresentations about its claims

10  process in order to stonewall.  (FAC, ¶ 34.)

11       Finally, if Plaintiff wanted to negotiate in good faith to

12  come to an amicable settlement, but did not want to give up its

13  right to sue, it could always have approached Defendant with a

14  tolling agreement, effectively stopping the clock on the statute by

15  agreement.  See, e.g., Britz Fertilizers, Inc. v. Nationwide

16  Agribusiness Ins. Co., No. 1:10-CV-02051-AWI, 2013 WL 5519605, at

17  *18-19 (E.D. Cal. Oct. 3, 2013) (statute of limitations on contract

18  claim not time-barred due, in part, to tolling agreement).  The

19  parties here are sophisticated businesses with access to counsel,

20

21       [4]See Transport Ins. Co. v. TIG Ins. Co., 202 Cal. App. 4th 984

22  (2012) (expressing doubt that equitable tolling could apply to a
    contract claim, "in light of the lengthy statute of limitations

23  involved"); Lantzy v. Centex Homes, 31 Cal. 4th 363, 380, 73 P.3d
    517, 530 (2003) ("Because plaintiffs had three or four years after

24  discovery, and up to ten years after the project's completion, to
    bring their suits for latent construction defects, many of the

25  concerns that might warrant equitable tolling are ameliorated.
    Indeed, were we to conclude that the generous limitations period of

26  section 337.15 is equitably tolled for repairs, despite the absence
    of any specific indication that the 1971 Legislature so intended,

27  the implication would arise that all statutes of limitations are
    similarly tolled or suspended in progress while the parties make

28  sincere efforts to adjust their differences short of litigation. We
    find no such general principle in California law.").

8

1 and such an agreement was within their reach.  (If Defendant was

2 not willing to enter into such an agreement, of course, that would

3 have been a strong indication that it was not interested in

4 reaching an amicable settlement.)

5     Plaintiff's facts, even if taken as true, do not plausibly

6 suggest grounds for equitable tolling or other equitable relief

7 from the statute of limitations.

8 **C.    Other Arguments**

9     Because the claims in the FAC are time-barred, the Court does

10 not consider other arguments raised by the parties in this motion.

11 **IV.   CONCLUSION**

12     Plaintiff's First Amended Complaint is hereby DISMISSED.

13

14

15 IT IS SO ORDERED.

16

17

18 Dated: July 7, 2015

19                DEAN D. PREGERSON
               United States District Judge

20

21

22

23

24

25

26

27

28